# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Wilfredo Madera and<br>Sandra M. Madera,<br><br>Debtors. | C/A No. 10-08464-DD<br><br>Chapter 13<br><br>**ORDER ON CONFIRMATION** |

       This matter is before the Court on Wilfredo Madera and Sandra M. Madera's ("Debtors") chapter 13 plan filed November 29, 2010 ("Plan"). Debtors' Plan generally follows this District's form plan and contains additional provisions that are the subject of this Order. Joy Goodwin, the chapter 13 trustee ("Trustee"), notified Debtor's counsel that she would object to confirmation of the plan unless interest was paid to the unsecured creditors due to Debtors' significant amount of excess disposable income. Debtors agreed to amend the plan to do so, as discussed below. A confirmation hearing on Debtors' Plan was originally scheduled for February 7, 2011. At that hearing, Debtors' counsel, apparently believing that all issues were resolved, had another attorney stand in for him. Because the Court had concerns about the Plan's non-conforming provisions which could not be addressed in Debtors' counsel's absence, the confirmation hearing was continued at that time to February 14, 2011. A confirmation hearing on Debtors' Plan was held on February 14, 2011. At the confirmation hearing, the Court questioned the Plan's non-conforming provisions.[1] After Debtors' counsel provided responses and arguments in favor of the non-conforming provisions, the Court took the matter of plan confirmation under advisement. After consideration of the issues and the materials submitted to

---

[1] Trustee also expressed concerns about certain non-conforming provisions. Debtors' counsel objected to the Court's consideration of Trustee's "objection," as it was not formally filed with the Court. The Court considered the non-conforming language only on its own motion.

1

the Court by Debtors' counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtors filed for chapter 13 protection on November 24, 2010. Debtors are an above-median income family whose Schedule J discloses disposable income of $2,063.82 per month. Debtors' secured debt totals $176,759, consisting of a mortgage debt in the amount of $137,019 and three other accounts listed in Debtors' schedules as revolving or installment accounts, one of which is apparently a second mortgage.[2] Debtors' Schedule D lists both of Debtors' mortgage debts as disputed, although Debtors' Plan treats the obligations as current, with payments to be made by Debtors directly to the lienholders outside the plan. Debtors' Schedule F lists a total of $62,946.00 in unsecured debt.

Debtors' Plan was filed November 29, 2010. Debtors' Plan provides for payments of $1,535 per month for 57 months. Ordinarily, the applicable commitment period for above-median debtors is 60 months. However, Debtors' Plan will pay 100% of general unsecured claims and therefore, the commitment period of only 57 months is proper. Prior to the confirmation hearing, Trustee requested, due to the large amount of excess disposable income, an amended plan increasing the plan payments be filed in order to pay interest to unsecured creditors. As of February 14, 2011, the date of Debtors' continued confirmation hearing, no amended plan had been filed. Debtors' counsel indicated at the hearing that he did not believe that Trustee's request was "legal"; nevertheless, Debtors' counsel indicated that Debtors had agreed to file an amended plan in order to pay 5.25% interest to unsecured creditors, because "[they] would rather pay the extra $10,000 than fight with [Trustee]." Debtors' counsel

---

[2] Based on Debtors' counsel's presentation of Debtors' Plan at the confirmation hearing, it appears that one of these debts listed as a revolving account is a second mortgage. This debt is owed to Bac Home Loans Servicing. The amount owed, as listed on Schedule D, is $25,537.00. The other two debts are apparently for Debtors' vehicles.

indicated that the amended plan would provide an increased payment of $1,700 per month. No amended plan has been filed to date.

The non-conforming provisions that Debtors' counsel has included in Debtors' Plan are set forth in three different sections of the form plan. The first non-conforming provision is contained in the Assumption or Rejection of Executory Contract/Unexpired Lease section of the form plan, and states that Debtors reject "all arbitration provisions in all contracts with all creditors." This provision also requires that the bankruptcy court resolve all disputes. The second provision added by Debtors' counsel is in the Long-Term or Mortgage Debt section of Debtors' Plan. It provides that Debtors reserve the right to dispute their mortgage debt, both as to amount and validity, if their mortgage creditor cannot prove "amounts due or legal ownership" of their loan. Finally, Debtors' counsel has added numerous non-conforming provisions at the end of the form plan, which set forth the effect of confirmation in the event the plan provides for payments of arrearages. These provisions require the creditor to apply payments received from the trustee only to arrearages and payments received directly from Debtors to the post-petition period. The provisions additionally state that Debtors and Debtors' counsel should be provided notice of any post-confirmation charges, fees, costs, or other changes to the loan, and also reserve the right for Debtors to cure or waive post-confirmation defaults. The final non-conforming provision states that no provisions in Debtors' Plan will be deemed to waive or adversely affect any action under 11 U.S.C. § 524(i).

## CONCLUSIONS OF LAW

### I. Judge's Duty of Independent Review

The United States Supreme Court has stated that even if no objections to a proposed chapter 13 plan are filed, a bankruptcy court is required to undertake an independent examination of the

3

debtor's plan in order to ensure that it complies with the requirements of the Bankruptcy Code. *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381, 1381 n.14 (2010). *See also In re Martin*, No. 10-8127113, 2011 WL 309600, at *6 (Bankr. M.D.N.C. Jan. 26, 2011) (rejecting Debtors' argument that *Espinosa* "places the burden on creditors to object . . . and [requires] bankruptcy courts [ ] to perceive a creditor's inaction as an implicit acceptance of the plan" and stating that "[b]ankruptcy courts cannot confirm plans that do not comply with the Code simply because a creditor fails to come forward"); *In re Russell*, No. 10-11720-SSM, 2010 WL 2671496, at *4 (Bankr. E.D. Va. June 30, 2010) ("[A] bankruptcy court has an independent duty to ensure that a chapter 13 plan meets the statutory requirements for confirmation.") (citing *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 n.14 (2010); *United States v. Easley*, 216 B.R. 543, 544 n.1 (Bankr. W.D. Va. 1997); *In re Bowles*, 48 B.R. 502, 505 (Bankr. E.D. Va. 1985)).

Debtors' counsel nevertheless asserts that because no creditors have objected to Debtors' proposed plan, all creditors accept the plan and it must be confirmed. Debtors' counsel's authority for this assertion is Judge Waites' opinion in *In re Thomas*,[3] as well as the language of 11 U.S.C. § 1325[4] and the language in the Notice to Creditors and Parties in Interest portion of the form plan, which states, "Failure to object may constitute an implied acceptance of and consent to the relief requested in this document."

In another context, this Court has held that failure to object does not constitute an acceptance. *See In re Carolina Park Assocs., LLC*, 430 B.R. 744, 749 (Bankr. D.S.C. 2010) *vacated on other grounds*, 2010 WL 3893628 (D.S.C. Sept. 30, 2010) ("'Consent' and 'fails to object' are simply not synonymous.") The fact that Debtors have received no objections to their

---

[3] Case No. 96-79381-W (Bankr. D.S.C. July 11, 1997).
[4] The Bankruptcy Code is set forth in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* Further reference to the Bankruptcy Code will be by section number only.

4

plan from their creditors does not mean that all creditors endorse Debtors' Plan. Additionally, as explained above, even if all creditors could be found to have accepted the plan, the Court has an independent duty to examine Debtors' Plan to ensure compliance with the Bankruptcy Code. After such a review, the Court finds that Debtors' Plan does not satisfy the requirements of the Code and should not be confirmed.

Debtors' counsel relies in part on *Thomas* as support for his argument that a creditor's failure to object to a debtor's plan constitutes acceptance of the plan. In *Thomas*, a secured creditor argued, after the debtor's plan was confirmed, that its failure to timely object to the original proposed plan was excusable due to recent changes in the Local Rules. *Thomas*, Case No. 96-79381-W, at 3 (Bankr. D.S.C. July 11, 1997). The creditor further argued that the amendment of the proposed plan provided it with a new opportunity to object. *Id.* Judge Waites first held that the creditor's ignorance of the Local Rules was not excusable neglect, and then turned to the creditor's argument regarding its opportunity to object. *Id.* at 4, 5. Judge Waites held that because the creditor had failed to timely object to the original plan and was not adversely affected by the amended plan, it was not required to be served with the amended plan and did not gain a new opportunity to object upon amendment to the plan. *Id.* at 5–7. *Thomas* involved a creditor seeking to amend its treatment under a debtor's confirmed plan after that plan was confirmed in the absence of any objection. This is an entirely different situation than the one currently before the Court. As a result, the reasoning and holdings in *Thomas* are simply not applicable here.

Debtors' counsel also relies on section 1325, which states, "Except as provided in subsection (b), the court shall confirm a plan if . . . the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Debtors' counsel argues that this

5

section leaves the Court with no discretion and requires it to confirm a plan in the absence of any objections from creditors. However, section 1325 requires that the plan comply with all the provisions of chapter 13 and any applicable provisions of title 11, even in the absence of objections. Therefore, even if no creditor objects to confirmation of the proposed plan, it must still meet the requirements of section 1325(a). If the trustee or an unsecured creditor objects, section 1325(b) prohibits courts from approving a plan unless it meets certain additional requirements. As a result, for his plan to be confirmed, a debtor must show that his plan complies with all the requirements of section 1325(a) and, if an unsecured creditor or the trustee objects, with section 1325(b). Section 1325 does not suggest that the absence of an objection equals confirmation, but rather supports the principle of the need for judicial supervision of the plan confirmation process. And, as discussed below, Debtors' Plan does not meet the very requirements of the section Debtors' counsel cites as authority for his contention that the Court has no discretion to refuse confirmation. Section 1325, like the other authority relied on by Debtors' counsel, does not provide support for Debtors' counsel's argument that the Court must confirm Debtors' Plan due to the absence of any objection to confirmation.

Similarly, the boilerplate provision of the form plan that states "failure to object may constitute an implied acceptance of and consent to the relief requested in this document" does not remove the need for court supervision of the plan confirmation process. The provision may bind a creditor in the event the Court finds a debtor's plan is confirmable; however, the court's obligation to ensure that the plan meets the standard for confirmation is unaffected. Just like Debtors' counsel's other cited authority, the form plan's provision does not support Debtors' counsel's contention that Debtors' Plan must be confirmed.

6

**II. Use of Form Plans**

The Bankruptcy Rules provide bankruptcy courts with the discretion to "make and amend rules governing practice and procedure," as long as those rules are consistent with Acts of Congress and the Bankruptcy Rules. Fed. R. Bankr. P. 9029(a)(1). The District of South Carolina has exercised this discretion and enacted a set of Local Rules. Local Rule 3015-1 states, "Every chapter 13 debtor must complete [the form plan adopted in this District] or file a plan in substantial conformance with [the form plan]." SC LBR 3015-1. The form plan itself contemplates additions to and modifications of the plan. The form plan's language provides, in Section I.A., "All additions or modifications to the Court's form plan . . . are highlighted by italics. . . . If changes are substantial or if an alternative plan is proposed, a cover sheet that summarizes and identifies the changes shall be filed and served herewith."

Several courts have approved the use of similar form plans, stating that their use is consistent with the Bankruptcy Code and one of its main purposes, efficient administration of bankruptcy cases. *See In re Walat*, 89 B.R. 11, 13 (E.D. Va. 1988) (finding a local rule requiring use of a certain chapter 13 form plan valid and stating, "Because the central purpose of [the local rule] is obviously efficiency, a purpose which is consistent with the letter and spirit of the bankruptcy laws, there is no conflict with the interests of any party. Indeed, all equally benefit from a more manageable court system."); *In re Russell*, Case No. 10-11720-SSM, 2010 WL 2671496, at *2 (Bankr. E.D. Va. June 30, 2010) ("The advantages of a uniform plan are many. A uniform format greatly facilitates review by creditors, the trustee, and the court and increases the efficiency of administering chapter 13 cases.") (citing *In re Walat*, 89 B.R. 11, 13 (E.D. Va. 1988); *In re Maupin*, 384 B.R. 421, 426 (Bankr. W.D. Va. 2007)); *In re Maupin*, 384 B.R. 421,

7

426 (Bankr. W.D. Va. 2007) ("Efficiency is a valid purpose of a uniform plan."). As stated by the court in *Maupin*:

> There are reasons that the Uniform Plan is required. First, the Uniform Plan provides debtors and debtors' counsel with a template that, if properly employed, will result in a plan that has a high probability of confirmation. Second, and perhaps more importantly, the Uniform Plan allows each creditor to review the plan in a more efficient manner by assuring it that its claim will be treated as provided in a certain section of the plan depending on the nature and character of the claim. Efficiency is a valid purpose of a uniform plan.

*Maupin*, 384 B.R. at 426. The form plan used in this District serves these important purposes while affording debtors the opportunity to add or change provisions to meet the requirements of each particular financial and legal situation.

### III. Arbitration Provisions

The first provision Debtor's counsel has added to Debtors' Plan is in the Assumption or Rejection of Executory Contract/Unexpired Lease section of the form plan. This added language provides, "Debtor rejects arbitration provisions in all contracts with all creditors and requires bankruptcy court resolution of all disputes." No contracts are listed in the plan as either assumed or rejected, and the box which states, "Check this box if debtor has no executory contracts or unexpired leases" is checked on Debtors' Schedule G. At the confirmation hearing, Debtors' counsel provided the Court with several cases which Debtors' counsel argues support the inclusion of this language in Debtors' Plan.[5] The Court will address these cases, as well as additional relevant case law, below.

Debtors' counsel first discussed two unpublished opinions from other districts. The first of these opinions is from the Southern District of Texas. In that case, the court considered an arbitration rider attached to a home equity loan agreement. *Martinez v. Beneficial Texas, Inc. (In*

---

[5] Debtors' counsel also indicated that he believed the Court should consider permanently incorporating this provision into the standard language of the form plan.

8

*re Martinez)*, C/A No. 06-34385, Adv. Pro. No. 06-3669, at 1,2 (Bankr. S.D. Tex. Apr. 19, 2007). The debtor's grandmother had signed the agreement, but the debtor had not. *Id.* When the debtor's grandmother died, the debtor received the real property subject to the home equity loan through his grandmother's will. *Id.* The creditor sought an order from the court requiring the parties to arbitrate certain disputes. *Id.* The court found that the debtor was bound to the terms of the arbitration rider; however, the court, using the *National Gypsum* test,[6] further held that it had discretion to deny enforcement of the arbitration clause, and did so, requiring that the parties' disputes be adjudicated in the bankruptcy court. *Id.* at 8, 12–14.

The second case, similar to *Martinez*, involved an arbitration agreement signed contemporaneously with a retail installment contract. *Russell v. Queen City Furniture (In re Russell)*, C/A No. 08-13173-NPO, Adv. Pro. No. 08-01215-NPO, at 2,3 (Bankr. N.D. Miss. Jan. 23, 2009). In that case, just as in *Martinez*, the court determined that it had discretion to deny enforcement of the arbitration agreement and exercised its discretion to ensure the parties' dispute was heard in the bankruptcy court. *Id.* at 9, 10.

Debtors' counsel argues that these cases provide authority for his contention that the proposed language in Debtors' Plan should be approved. To the extent that Debtors' counsel contends these cases stand for the proposition that a bankruptcy court has discretion to deny enforcement of an arbitration provision in favor of adjudicating the dispute in bankruptcy court, the Court agrees with Debtors' counsel. However, finding a court has discretion to deny enforcement of an arbitration clause is a far cry both from finding a court has discretion to find

---

[6] The *National Gypsum* test was set forth in *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056 (5th Cir 1997). In that case, the court set forth a two prong test for determining when a bankruptcy court has discretion to deny enforcement of an arbitration provision. The court has such discretion if "the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code. *Gandy v. Gandy (In re Gandy)*, 299 F.3d 489, 495 (5th Cir. 2002) (citing *Nat'l Gypsum*, 118 F.3d at 1067).

all arbitration provisions to which a debtor is subject unenforceable without further examination and from allowing a debtor to reject all such arbitration provisions in all contracts carte blanche and simultaneously assume the other provisions of all those contracts. These cases simply do not address the situation presently before the Court and do not provide authority for the inclusion of the proposed language in Debtors' Plan.

Debtors' counsel next turned to a South Carolina Supreme Court case which he urges is dispositive on the issue of the added language. This case involved a trade-in contract between a car dealership and a customer. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 19, 644 S.E.2d 663, 666 (2007). The contract contained an arbitration agreement which the plaintiff, the customer, alleged was unconscionable and thus unenforceable. *Id.* at 19–21, 644 S.E.2d at 666. The court discussed unconscionability at length, ultimately finding many of the provisions in the arbitration agreement unconscionable and unenforceable. *Id.* at 25–33, 644 S.E.2d at 669–73. The court then considered the severability of the arbitration clause, considering both whether certain portions of the clause could be severed and whether the entire arbitration clause could be severed from the rest of the contract. *Id.* at 33–36, 644 S.E.2d at 673, 674. Ultimately, the court found that the entire arbitration clause should be severed from the contract.[7] *Id.* at 34–35, 644 S.E.2d at 674. Counsel argues that since arbitration provisions are severable from contracts under this case, this Court should sever all such contract provisions and allow Debtors to reject them.

*Simpson*, while perhaps remotely relevant to the issue before the Court, does not resolve the issue. A court may of course sever an unconscionable arbitration provision from the rest of a contract. This does not address the question of whether a debtor may reject a certain provision of

---

[7] The court stated, "While this Court does not ignore South Carolina's policy favoring arbitration, we hold that the intent of the parties is best achieved by severing the arbitration clause in its entirety rather than 'rewriting' the contract by severing multiple unenforceable provisions." *Simpson*, 373 S.C. at 34–35, 644 S.E.2d at 674.

10

a contract he doesn't like while simultaneously assuming the more favorable, or at least less offensive, provisions. This case, like the others discussed above, does not resolve the issue raised by the proposed added language.

Courts in other districts have frequently stated that in a bankruptcy context, when a debtor seeks to assume an executory contract he must assume the entire contract and cannot pick and choose which provisions to reject. *See In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3rd Cir. 1951) ("The trustee, however, may not blow hot and cold. If he accepts the contract he accepts it cum onere. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."); *In re S. Canaan Cellular Investments, LLC*, Nos. 09-10473bf, 09-10474, 2011 WL 52558, at *8 (Bankr. E.D. Pa. Jan. 6, 2011) ("The assumption of an executory contract by a chapter 11 debtor in possession results in the assumption of the contract with all its provisions. . . . [t]hat is, the executory contract is assumed *cum onere*-i.e., with all of its burdens."); *In re Buffets Holdings, Inc.*, 387 B.R. 115, 119 (Bankr. D. Del. 2008) ("If the debtor decides to assume a lease, however, it must generally assume all the terms of the lease and may not pick and choose only favorable terms to be assumed."); *In re ANC Rental Corp., Inc.*, 277 B.R. 226, 238–39 (Bankr. D. Del. 2002) ("Section 365(f) . . . requires that a debtor assume the contract *cum onere* without any change."). Additionally, one court in this Circuit has rejected a very similar provision to that advocated by Debtors' counsel, stating that there were "a number of problems with [the] provision." *In re Maupin*, 384 B.R. 421, 429 (Bankr. W.D. Va. 2007). It is clear that when seeking to assume a contract in bankruptcy, the debtor must generally assume the entire contract. The proposed language in Debtors' Plan seeking to reject all arbitration provisions is improper, as it violates this principle in seeking to reject a single provision of all of Debtors' contracts while assuming the rest.

11

Finally, Debtors' attempt to reject all arbitration provisions in contracts ignores the issue of whether the contracts are executory in the first place. Section 365 only permits a debtor to assume or reject executory contracts; a debtor may not reject any contract he wishes. *In re Stewart Foods, Inc.*, 64 F.3d 141, 145 (4th Cir. 1995) ("Because § 365 applies only to executory contracts, a debtor-in-possession does not have the option of rejecting or assuming non-executory contracts."). As a result, before a debtor can assume or reject a contract, it must first be determined that the contract is in fact executory. Whether a contract is executory must be decided on a case by case basis.

Debtors' counsel finally argues that both Judge Waites and Judge Burris have previously approved plans that contained this language and therefore I should approve it as well. In Judge Waites' case,[8] language identical to that which Debtors' counsel has attempted to add in this case was added to the debtor's plan. The language was questioned at a confirmation hearing by Judge Waites. Later, Judge Waites entered a form Order, allowing the plan to be confirmed if the trustee recommended confirmation, but he did not address the added language. In Judge Burris's case,[9] it appears that the plan that was ultimately confirmed did not contain the non-conforming language presently at issue. In fact, the only mention of rejecting arbitration clauses in the plan before Judge Burris is a statement in the Notice section of the plan that says the following: "The Chapter 13 Plan and Related Motions propose the assumption of executory contracts as follows: Any Creditor with arbitration clause in contract- Debtor to reject arbitration clause." No additional language is present in the executory contract section of the plan.

---

[8] In re Jacob Mack Wilson, C/A No. 10-06500-jw (Bankr. D.S.C. 2010). C-I order was entered on November 5, 2010.
[9] In re Timothy Carl Kain and Ruth Mulfinger Kain, C/A No. 08-08404-hb (Bankr. D.S.C. 2010). Order Confirming Plan entered February 4, 2010.

12

The fact that these two plans were confirmed by Judge Waites and Judge Burris hardly proves that those judges endorse this non-conforming language, especially in light of the fact that it is not actually contained in the body of the plan confirmed by Judge Burris. Additionally, these decisions, whatever proposition they may stand for, are not binding, both because they are unpublished and because they are not appellate authority. No evidence has been presented to allay my concerns about the non-conforming language rejecting all arbitration provisions. Debtors' Plan containing this language cannot be confirmed.

### IV. Provision Reserving Debtors' Right to Dispute Mortgage Debt

The next non-conforming provision for the Court to consider is in the Long-Term Mortgage Debt section of Debtors' Plan. This provision states, "Debtor reserves right to dispute this debt both as to amount and validity if creditor is unable to prove amounts due or legal ownership of this loan." At the confirmation hearing, the Court questioned Debtors' counsel with regard to this provision and its purpose. Debtors' counsel responded that Debtors were current on their mortgages, but that this provision is necessary because Debtors' mortgage creditors have not yet filed proofs of claim; therefore, there is no way for Debtors to know whether they have a dispute regarding their mortgage debt. Debtors have also listed their mortgage debts as disputed on their Schedule D. When Debtors' counsel was asked why it was proper to list these debts as disputed despite the fact that Debtors did not know whether they in fact had a dispute, Debtors' counsel replied, "They know that they don't know."

Debtors' counsel also argues that this language is necessary to Debtors' Plan in light of the *In re Woodberry*[10] and *In re Burretto*[11] opinions in this District. His argument is that these cases indicate that a debtor cannot be sure who owns his mortgage, and that therefore he must

---

[10] 383 B.R. 373 (Bankr. D.S.C. 2008).
[11] Case No. 05-07146-jw (Bankr. D.S.C. Jul. 23, 2008).

13

reserve the right to dispute the ownership of the loan at every turn because if he does not, he will lose the right to do so later in the case. *See Burretto*, No. 05-07146-jw (Bankr. D.S.C. Jul. 23, 2008) (finding that the loan servicer had standing to bring a motion for relief from stay and further finding that the debtors' motion to dismiss the servicer's relief from stay motion was improper because the debtors had paid mortgage payments to the servicer for three years without objection).[12]

If Debtors wish to contest a creditor's claimed ownership of a mortgage, they can file a timely objection to the creditor's proof of claim. However, as Judge Waites stated in *Burretto*, a debtor should not be allowed to pay a creditor without objection for several years and then contest the creditor's claim once a dispute arises between the debtor and creditor. This estoppel-based ruling is applied on a case by case basis and necessarily depends on the facts of each case. Adding language to a debtor's plan to reserve the right to dispute creditors' claims at some point in the future would not change this result. A debtor's action in paying a creditor without objection for a significant period of time recognizes that creditor as the proper party to receive payment. *See Burretto,* No. 05-07146-jw, at 4 (""[F]or the past three years, Debtors have recognized Litton as the proper party to act on behalf of the mortgage creditor, whoever that creditor may be, by sending payment to Litton."). Any facts in mitigation of this general principle would depend upon the facts and circumstances of a particular case. The proposed non-conforming language is unnecessary, serves no useful purpose, and should not be included in Debtors' Plan. Adding language to the form plan, even innocuous language with no effect on parties' rights or actions, serves only to increase the burden on the court, trustee, and creditors to ferret out and interpret whatever provisions a debtor may choose to add.

---

[12] John Cantrell, the attorney for Debtors in the present case, also represented the debtors in *Burretto*.

### V. Other Non-Conforming Provisions

At the end of Debtors' Plan, Debtors' counsel has included numerous other non-conforming provisions. These provisions provide:

> If the plan provides for payment of arrearages with regular payments to be made outside the plan directly by the debtor(s), confirmation of the plan shall:
> (a) impose a duty on the holder or servicer of a claim to apply the payments received from the trustee only to arrearages provided for under the plan. The amount of the arrearages shall be set by the creditor's proof of claim unless specifically set in a confirmed plan or by an order of the court; and,
> (b) impose a duty on the holder or servicer of a claim to apply all payments made directly by the debtor to the post-petition period.
> (c) Notice of post-confirmation charges, fees and costs, interest rate changes, escrow adjustments, and any change in servicer shall be provided to the debtor and debtor's counsel according to the requirements of state and federal law, including RESPA if applicable, and the terms of the loan documents. The providing of this information shall not be considered a violation of the automatic stay. This provision does not alter a creditor's duty, if applicable, to obtain court approval of post-confirmation fees, charges, and costs.
> (d) The debtor reserves the right to cure or waive post-confirmation defaults pursuant to 11 U.S.C. 1322(b)(3) and (5).
> (e) No provision herein shall be deemed to waive or adversely affect any action that may arise under 11 U.S.C. 524(i).

It appears that the non-conforming language proposed by Debtors serves no useful purpose. First, much of the language addresses rights that Debtors would have in the event that their plan pays mortgage arrearages. Debtors state they are current on their mortgages; therefore, these provisions are inapplicable in the present case and completely superfluous.[13] Sections (a) and (b) of the added paragraphs may have application in other contexts, but do not have any

---

[13] When questioned about the need for this language in light of the fact that Debtors claim to be current on their mortgages, Debtors' counsel stated that they can never be sure whether they are current until the mortgage creditors file proofs of claim. Additionally, Debtors' counsel stated that he wished to further modify this non-conforming provision to take out the language indicating it only applied in the event of arrearages. Why Debtors' counsel wishes to include a plan provision relating to payments made to catch up mortgage arrearages when there are none is a mystery.

15

application here.  The remainder of the added language deals with rights Debtors would already have even in the absence of this language; as a result, this language is not needed for Debtors to take any of the actions set forth in that language.  Much effort has been taken in recent years to strip the form plan of provisions that merely restate the law, and the Court is unwilling to allow Debtors' counsel to undo this progress by muddling the form plan with numerous useless non-conforming provisions. None of this language, in light of the fact that arrearages are not paid through Debtors' Plan, serves any constructive purpose and should be taken out of Debtors' Plan.

Debtors' counsel also asserted at the hearing that he included the non-conforming language because he wanted to make sure creditors had sufficient notice of their rights.  The Court appreciates Debtors' counsel's desire to assist Debtors' creditors; however, these provisions do not provide creditors with any notice additional to that which they will already receive from Debtors' Plan and the application of the law.  These provisions are not useful to creditors.  Debtors' counsel's argument that the non-conforming language will assist creditors is unpersuasive.

### VI.  Compliance with Sections 1322 and 1325

Debtors' counsel also argues that section 1322(b)(11) provides him with authority to add the non-conforming language.  Further, Debtors' counsel asserts that section 1325 requires the Court to confirm Debtors' Plan, as all the requirements of that section are met, and the section's use of the word "shall" deprives the Court of discretion in this situation.  Section 1325(a)(1) states, "Except as provided in subsection (b), the court shall confirm a plan if . . . the plan complies with the provisions of this chapter and with the other applicable provisions of this title." Section 1322(b)(11), an applicable provision contained in title 11 and chapter 13, allows a debtor to include "**appropriate** provision[s] **not inconsistent** with this title" (emphasis added).

16

Debtors' rejection of all arbitration provisions in whatever contracts may exist, as the Court has explained in detail above, is inconsistent with section 365(a) and case law in this Circuit stating that a debtor must assume or reject an executory contract in full and cannot choose which provisions he wishes to accept or reject. Additionally, the scope of the rejection is not clear. The provision applies to "all contracts", yet section 365(a), as explained above, applies only to "executory" contracts. This limitation further supports the Court's decision not to permit Debtors an avenue to generally reject particular provisions that may or may not exist in Debtors' contracts with others. Such decisions are best made on a case by case basis with attention to each individual contract.

The other non-conforming provisions included in Debtors' Plan are inconsistent with section 1322(b)(11) and section 1325. The Court finds them completely unnecessary; they serve no useful purpose. In addition, they are very likely to confuse creditors attempting to ascertain their treatment under Debtors' Plan. For example, to state that mortgage obligations are current and to then add provisions dealing with mortgages arrearages is, at best, confusing. These creditors have sufficient notice of their rights under the Code and Debtors' Plan absent the non-conforming language. Finally, the non-conforming provisions undermine one of the main goals of the Bankruptcy Code, efficient administration of bankruptcy cases. The Court rejects Debtors' counsel's argument that it must confirm Debtors' Plan, as the Court finds that the Plan's non-conforming language does not meet the requirements of section 1325.

## **CONCLUSION**

The non-conforming language proposed by Debtors is unnecessary for this case and improper in application. As such, confirmation of Debtors' Plan is denied. Debtors must file an

17

appropriate amended plan within ten (10) days or their case will be dismissed without further notice or hearing.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**03/01/2011**



Entered: 03/02/2011

David R. Duncan
US Bankruptcy Judge
District of South Carolina